**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| COURTNEY J. HUSE, | ) | CASE NO. 3:19-cv-02935 |
| | ) | |
| Plaintiff, | ) | JUDGE JAMES G. CARR |
| | ) | |
| v. | ) | MAGISTRATE JUDGE DAVID A. RUIZ |
| | ) | |
| ANDREW SAUL, | ) | |
| *Comm'r of Soc. Sec.*, | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| Defendant. | ) | |

Plaintiff, Courtney J. Huse (hereinafter "Plaintiff"), challenges the final decision of Defendant Andrew Saul, Commissioner of Social Security (hereinafter "Commissioner"), denying her application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 416(i), 423 *et seq*. ("Act"). This court has jurisdiction pursuant to 42 U.S.C. § 405(g). This case is before the undersigned United States Magistrate Judge pursuant to an automatic referral under Local Rule 72.2(b) for a Report and Recommendation. For the reasons set forth below, the Magistrate Judge recommends that the Commissioner's final decision be AFFIRMED.

**I. Procedural History**

On August 10, 2016, Plaintiff filed her application for DIB, alleging a disability onset date of October 20, 2015. (R. 9, Transcript ("Tr.") 161-164). The application was denied initially and upon reconsideration, and Plaintiff requested a hearing before an Administrative Law Judge

("ALJ"). (Tr. 77-160). Plaintiff participated in the hearing on August 2, 2018, was represented by counsel, and testified. (Tr. 32-67). A vocational expert ("VE") also participated and testified. *Id*. On November 29, 2018, the ALJ found Plaintiff not disabled. (Tr. 27). On October 21, 2019, the Appeals Council denied Plaintiff's request to review the ALJ's decision, and the ALJ's decision became the Commissioner's final decision. (Tr. 1-6). Plaintiff's complaint challenges the Commissioner's final decision. (R. 1). The parties have completed briefing in this case. (R. 11, 12 & 13).

Plaintiff asserts the following assignment of error: (1) the ALJ's residual functional capacity ("RFC") is not supported by substantial evidence as the ALJ failed to properly account for all of her "gastrointestinal issues[,]" which Plaintiff notes is "narrowly focused on the failure to account for Ms. Huse's bladder-related issues." (R. 11, PageID# 1083, 1087).

## II. Evidence

### A. Relevant Medical Evidence[1]

#### 1.  Treatment Records

On September 11, 2015, Plaintiff was seen by Maurice Chung, M.D., upon referral from Dr. Houg for chronic pelvic pain and abdominal pain, among other conditions. (Tr. 413). She reported exercised induced incontinence as a teenager. *Id*. She reported syncope after urination and bowel movements. *Id*. On physical examination, Dr. Chung noted numerous abnormalities,

---

[1]  As noted, *infra* in Section IV, the ALJ found the following serve impairments: "status-post dual chamber pacemaker implant and multiple revisions, last in September 2016; obesity; fibromyalgia; neurocardiogenic syncope; bilateral pudendal neuralgia; and hypotension," but Plaintiff's assignment of error focuses on gastrointestinal issues. Consequently, the recitation of the evidence is not intended to be exhaustive. It includes only those portions of the record cited by the parties in their briefs and also deemed relevant by the court to the assignment of error raised.

including significantly increased pinprick neuralgia from T10 to L3, tender trigger points in the abdominus rectus muscle, and a tender bladder. (Tr. 414). Plaintiff reported burning with urination, blood in urine, urgency, frequency, and incomplete emptying. *Id*. She explained that her "urine does not come out in a good stream." *Id*. He diagnosed dyspareunia, constipation, syncope with orthostatic changes, abdominopelvic pain syndrome, pelvic tension myofascial syndrome, anxiety disorder, pudendal neuralgia, endometriosis and severe dysmenorrhea. (Tr. 415).

On October 2, 2015, Plaintiff was seen for a gynecological examination by nurse Shane Gerber. (Tr. 951-955). She reported bladder disturbance, moderate abdominal pain, nausea, and syncope. (Tr. 951). Physical examination yielded pain in genitourinary area. *Id*.

On October 8, 2015, Plaintiff received a bilateral pudendal nerve block for chronic pelvic pain, and she underwent an intraoperative fluoroscopy. (Tr. 409).

On October 15, 2015, Plaintiff was seen by Dr. Chung for a post-operative visit, where she reported urinary difficulty and intermittent pain. (Tr. 923-928). Her examination was inconsistent due to hypersensitivity, and Dr. Chung assessed hypersensitivity disorder and referred Plaintiff for counseling. (Tr. 927).

On October 29, 2015, Plaintiff reported at least eighty percent improvement in pelvic pain from her first bilateral pudendal nerve block, and a second injection was administered. (Tr. 406).

On November 19, 2015, Plaintiff received a third nerve block. (Tr. 909).

On January 8, 2016, Plaintiff presented to nurse Gerber with complaints of abdominal pain. (Tr. 466-471). Plaintiff recounted that her abdominal pain is moderate and had persisted for twenty years without change. (Tr. 466). Plaintiff denied experiencing any genitourinary symptoms. (Tr. 469).

On April 4, 2016, Plaintiff was seen by Adam Jacob Hough, M.D. (Tr. 341-343). She had no active problems. (Tr. 341). She reported standing ten to eleven hours per day. (Tr. 342). Plaintiff had no genitourinary or gastrointestinal symptoms. *Id.*

On August 8, 2016, Plaintiff was again seen by Dr. Hough. (Tr. 337-340). No active problems were noted and the chief reason for the visit was a refill for Prozac. (Tr. 337). There was no change in Plaintiff's urinary habits, and there were no genitourinary or gastrointestinal symptoms. (Tr. 338). On examination, she weighed 173 pounds with a BMI of 30.6. (Tr. 339). She was positive on 18/18 trigger points. (Tr. 339). She was assessed with fibromyalgia. *Id.*

On September 16, 2016, Plaintiff was seen by Dr. Chung for an annual examination. (Tr. 473-480). Plaintiff reported urinary incontinence, frequency, and urgency (Tr. 476). A rescue rinse ("RR") was performed for painful bladder spasm and series of 2-3 per week for 2-3 weeks was recommended. (Tr. 478). Dr. Chung recommended Botox injections for mixed incontinence. *Id.* Plaintiff also reported ninety percent improvement in her pelvic pain since her initial encounter. (Tr. 485).

On November 3, 2016, another RR was performed. (Tr. 571). Plaintiff reported "no improvement with the rinses[,] feels nausea with each one and almost feels worse." (Tr. 577). Dr. Chung assessed obesity, unspecified dyspareunia, pudendal neuralgia, proctalgia fugax, and recommended dietary management, exercise, pudendal blocks, and possibly Botox injections in the future. (Tr. 582).

On December 8, 2016, Plaintiff received another pudendal nerve block. (Tr. 598). Plaintiff reported improvement post-operation and was not using any pain medication. (Tr. 583). She was negative for dysuria, irregular menses, and urinary frequency. (Tr. 586). It was noted that Plaintiff had good results with RRs in the past. (Tr. 589).

On December 16, 2016, Plaintiff presented to Dr. Chung with mild abdominal pain that is sharp and stabbing, as well as dysuria. (Tr. 590). Plaintiff was offered a RR, but she declined indicating she would just drink more water and call if an appointment was necessary. (Tr. 595).

On January 6, 2017, Plaintiff described her urinary symptoms as mild-moderate, but constant. She reported dribbling, hesitance, and stress incontinence with coughing and sneezing. (Tr. 859). On physical examination, her genitourinary exam was normal. (Tr. 864).

On April 21, 2017, Plaintiff presented with painful menstrual cramps and moderate pelvic pain. (Tr. 841). She also reported urinary frequency and dysuria. (Tr. 844).

On May 11, 2017, Plaintiff underwent another pudendal block. (Tr. 850). She reported doing very well, except for a recent flare of pelvic pain. (Tr. 850-851).

On June 8, 2017, Plaintiff underwent a total laparoscopic hysterectomy, a cystoscopy, and a myofascial injection of the left lower quadrant. (Tr. 829-830, Exh. 13F at 75-76). According to Dr. Chung, the cystoscopy revealed "no injury to the bladder," "very good ureteral efflux bilaterally," and "bladder was normal." *Id*.

On October 4, 2017, Pedro J. Torrico, M.D., performed a neurological consult. (Tr. 739-744). Plaintiff reported no abdominal pain, diarrhea, urinary frequency, urgency, discomfort, or incontinence. (Tr. 740). Dr. Torrico's impression included dizzy spells, surgical menopause, and overactive bladder. (Tr. 741). The treatment plan was adequate hydration, high salt intake, continuing Midodrine, compression stockings, avoidance of triggers, and increased physical activity. *Id*.

On January 9, 2018, an abdominal CT yielded normal results with no acute abdominal or pelvic disease. (Tr. 809).

On February 23, 2018, Plaintiff presented to Dr. Chung with urinary symptoms and pelvic

pain. (Tr. 793-799). She indicated her symptoms occur constantly, but denied pain with urination or urinary retention and characterized her symptoms as mild to moderate. (Tr. 793, 796).

On March 9, 2018, Plaintiff was negative for dysuria and urinary frequency. (Tr. 781). She was scheduled for a pudendal nerve block and a Botox injection for late March 2018 pending approval of the latter. (Tr. 784).

On July 25, 2018, Plaintiff was seen for a possible urinary tract infection. (Tr. 991). She had no blood in her urine or pain with urination, and no discharge. (Tr. 1017). An ultrasound performed that day revealed a normal bladder with no urine observed in the bladder post-void. (Tr. 999).

On August 23, 2018, Plaintiff received another pudendal injection. (Tr. 1027).

**2. Medical Opinions Concerning Plaintiff's Functional Limitations**

On September 28, 2016, State Agency physician Esberdado Villanueva, M.D., completed a physical RFC assessment opining Plaintiff could lift/carry twenty pounds occasionally and ten pounds frequently, stand/walk for four hours, and sit for six hours in an eight-hour workday. (Tr. 72). Further, Plaintiff could never climb ladders/ropes/scaffolds; could occasionally climb ramps/stairs, kneel, crouch, and crawl; and, frequently balance and stoop. (Tr. 72). Plaintiff also had to avoid all hazards. (Tr. 73).

On April 13, 2017, State Agency physician Robert Wysokinski, M.D., completed a physical RFC assessment opining Plaintiff could lift/carry twenty pounds occasionally and ten pounds frequently, stand/walk for six hours, and sit for six hours in an eight-hour workday. (Tr. 87). Further, Plaintiff could never climb ladders/ropes/scaffolds; could occasionally climb ramps/stairs, kneel, crouch, and crawl; and, frequently balance and stoop. (Tr. 87-88). Plaintiff also had to avoid all hazards. (Tr. 88).

6

**B. Relevant Hearing Testimony**

At the hearing, Plaintiff testified as follows:

• She lives with her husband and two minor children. (Tr. 37-38). She moved her bedroom downstairs after she fell down the steps due to dizzy spells. (Tr. 38).

• She described an associate degree in marketing. (Tr. 39).

• She stopped working after her health symptoms—tired spells, dizzy spells, leg and neck pain—became progressively worse. (Tr. 44).

• She cannot work due to fibromyalgia pain and circulation issues that require her to elevate her legs. (Tr. 45). In addition, she receives bladder injections every six months. (Tr. 46).

• She can walk for "[t]hree hours at the most without me trying to sit and then my legs are swollen and my hands are swollen and they hurt." (Tr. 46). Arising from a seated position causes dizziness, and she has to get up very slowly. (Tr. 49). She needs to elevate her feet every three to four hours for about sixty minutes. *Id*.

• On a typical day, she stays in bed until around 10 a.m. She takes care of her children. On good days, she can perform typical housework, shop for groceries, and run errands. (Tr. 47). On days she feels unwell, her mother comes over and helps. *Id*.

• She has muscle pain throughout her body, which she has been told was caused by her multiple surgeries. (Tr. 50).

• There are days when she will be in the bathroom six to seven times a day. (Tr. 51, 54). She has difficulty emptying her bladder, and often sits and strains for fifteen minutes. (Tr. 52). The bladder injections she receives every six months help relax the nerves so she can urinate. She also receives Botox injections to relax the muscles. She has Stage II kidney disease and a cyst on her kidney. (Tr. 51).

The VE classified Plaintiff's past relevant jobs as follows: office manager, Dictionary of Occupational Titles ("DOT") 219.362-010, SVP 4, semi-skilled, light exertional; retail store manager, DOT 185.167-046, SVP 7, skilled, light exertional; corporate trainer, DOT 166.227-010, SVP 7, skilled, light exertional; and, exercise facility clerk, DOT 293.357-022, SVP 4, semi-skilled, light exertional. (Tr. 56-57).

The ALJ posed the following hypothetical question to the VE:

> Please assume an hypothetical individual of the Claimant's age, education,
> relevant vocational background. She can occasionally climb ramps and stairs.
> Never climb ladders, ropes or scaffolds and can occasionally balance, stoop,
> kneel, crouch but never crawl. She is limited to frequent pushing and pulling with
> her left non-dominant upper extremity. In addition, she can never work at
> unprotected heights or around moving dangerous mechanical parts. She is limited
> to getting up for from her work station slowly…. [S]he is also to have two
> additional bathroom breaks per day while remaining on task 90 percent of the
> time. She is limited to a sit/stand option at the work station each hour and change
> position for two minutes or remaining on task 90 percent of the time.

(Tr. 57).

The VE testified that such an individual could not perform Plaintiff's past relevant work as

generally performed or as she performed it. (Tr. 57). When asked if the hypothetical individual

could perform other work, the VE responded that "if an individual needs two additional breaks

beyond the customary break that that would require accommodation and there would be no

job[s]." (Tr. 58). When the ALJ sought clarification if that were still the case if the hypothetical

individual was on task ninety percent of the time, the VE stated that "if it's on an ongoing basis

every day that that would require accommodations." *Id*.

The ALJ proceeded to pose a second hypothetical question to the VE that kept the same

limitations as the first, but removed the two additional bathroom breaks. (Tr. 59). The VE again

testified that such an individual could not perform Plaintiff's past relevant work. *Id*. However,

the VE identified the following light exertional jobs that such an individual could perform:

cashier, DOT 211.462-010, SVP 2 (860,000 jobs nationally); routing clerk, DOT 222.587-038,

SVP 2 (50,000 jobs nationally); and, ticket taker, DOT 344.667-010, SVP 2 (7,000 jobs

nationally). (Tr. 59). The VE indicated her testimony was consistent with the DOT. (Tr. 60).

For the third hypothetical, the ALJ posed the following limitations to the VE: "Please

assume an hypothetical individual of Claimant's age, education, relevant vocational background,

able to do sedentary work except all the limitations listed in hypothetical Number 2." (Tr. 60).

The VE again testified that such an individual could not perform Plaintiff's past relevant work.

*Id.* However, the ALJ identified the following sedentary exertional jobs that such an individual

could perform: telephone quotation clerk, DOT 237.367-046, SVP 2 (3,600 jobs nationally);

addresser, DOT 209.587-010, SVP 2 (1,800 jobs nationally), and account clerk, DOT 205.367-

010, SVP 2 (600 jobs nationally).

The VE also testified that the need to lie down outside of normal breaks is work preclusive

at all exertional levels, as is being off task 25 percent or more during a workday or missing two

or more days of work per month on an ongoing basis. (Tr. 61). The VE indicated that "customary

break structure is two-15 minute breaks one in the morning, one in the afternoon and then an half

hour for lunch. Tolerance for being off task ranges between one and five percent of the work day

over and above the customary breaks. Tolerance for absence ranges between zero and three days

a month, however, if an individual consisten[tly] misses more than one day a month, they would

not be able to maintain competitive employment." (Tr. 61-62).

Plaintiff's counsel posed the following question: "Could you tell me if two or three times a

day somebody was having dizzy spells that would take them say three to five minutes each time

to recover before they could return to work, would that allow competitive employment?" (Tr.

62). The VE responded that "what you're talking about would be either additional breaks or time

off task and that individual would not be able to maintain competitive employment." *Id.* In

response to another question, the VE testified that an individual who needed to elevate his or her

legs above waist level for at least an hour per workday was also unemployable. (Tr. 62-63).

### III. Disability Standard

A claimant is entitled to receive benefits under the Social Security Act when she

establishes disability within the meaning of the Act. 20 C.F.R. § 404.1505 & 416.905; *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524 (6th Cir. 1981). A claimant is considered disabled when she cannot perform "substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.1505(a) and 416.905(a); 404.1509 and 416.909(a).

The Commissioner determines whether a claimant is disabled by way of a five-stage process. 20 C.F.R. § 404.1520(a)(4); *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). First, the claimant must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. 20 C.F.R. §§ 404.1520(b) and 416.920(b). Second, the claimant must show that she suffers from a medically determinable "severe impairment" or combination of impairments in order to warrant a finding of disability. 20 C.F.R. §§ 404.1520(c) and 416.920(c). A "severe impairment" is one that "significantly limits ... physical or mental ability to do basic work activities." *Abbott*, 905 F.2d at 923. Third, if the claimant is not performing substantial gainful activity, has a severe impairment (or combination of impairments) that is expected to last for at least twelve months, and the impairment(s) meets a listed impairment, the claimant is presumed to be disabled regardless of age, education or work experience. 20 C.F.R. §§ 404.1520(d) and 416.920(d). Fourth, if the claimant's impairment(s) does not prevent her from doing past relevant work, the claimant is not disabled. 20 C.F.R. §§ 404.1520(e)-(f) and 416.920(e)-(f). For the fifth and final step, even if the claimant's impairment(s) does prevent her from doing past relevant work, if other work exists in the national economy that the claimant can perform, the claimant is not disabled. 20 C.F.R. §§ 404.1520(g) and 416.920(g), 404.1560(c).

### IV. Summary of the ALJ's Decision

The ALJ made the following findings of fact and conclusions of law:

1.  The claimant meets the insured status requirements of the Social Security Act through December 31, 2020.

2.  The claimant has not engaged in substantial gainful activity since October 20, 2015, the alleged onset date (20 CFR 404.1571 *et seq*.).

3.  The claimant has the following severe impairments: status-post dual chamber pacemaker implant and multiple revisions, last in September 2016; obesity; fibromyalgia; neurocardiogenic syncope; bilateral pudendal neuralgia; and hypotension. (20 C.F.R. § 404.1520(c)).

4.  The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5.  After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 C.F.R. § 404.1567(b) except: She can occasionally balance, stoop, kneel, crouch, and climb ramps and stairs. She can never climb ladders, ropes, or scaffolds, or crawl. She is limited to frequent pushing and pulling with her left non-dominant upper extremity. In addition, she can never work at unprotected heights or around moving dangerous mechanical parts. She is limited to getting up from her workstation slowly and to a sit/stand option at the workstation each hour to change position for two minutes while remaining on task 90 percent of the time.

6.  The claimant is unable to perform any past relevant work (20 CFR 404.1565).

7.  The claimant was born on *** 1978 and was 37 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563).

8.  The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9.  Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404,

Subpart P, Appendix 2).

10.    Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569a).

11.    The claimant has not been under a disability, as defined in the Social Security Act, from October 20, 2015, through the date of this decision (20 CFR 404.1520(g)).

(Tr. 20-27).

## V. Law and Analysis

### A. Standard of Review

Judicial review of the Commissioner's decision is limited to determining whether it is supported by substantial evidence and was made pursuant to proper legal standards. *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010). Review must be based on the record as a whole. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). The court may look into any evidence in the record to determine if the ALJ's decision is supported by substantial evidence, regardless of whether it has actually been cited by the ALJ. (*Id.*) However, the court does not review the evidence *de novo*, make credibility determinations, or weigh the evidence. *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989).

The Commissioner's conclusions must be affirmed absent a determination that the ALJ failed to apply the correct legal standards or made findings of fact unsupported by substantial evidence in the record. *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009). Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Brainard*, 889 F.2d at 681. A decision supported by substantial evidence will not be overturned

even though substantial evidence supports the opposite conclusion. *Ealy*, 594 F.3d at 512.

### B.  Plaintiff's Assignments of Error

In the first and only assignment of error, Plaintiff asserts the ALJ did not account for all the limitations associated with Plaintiff's medically determinable severe impairments, specifically her genitourinary issues. (R. 11).

To the extent Plaintiff is asserting error at Step Two because the ALJ failed to designate Plaintiff's urological issues as severe, that argument is not well taken. At Step Two of the sequential analysis, claimant has the burden of proving she has a severe, medically determinable impairment in order to establish disability within the meaning of the Act. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 548 (6th Cir. 2004) (citing 20 C.F.R. § 404.1520(a)(4)(ii)); *Jent v. Secretary, HHS*, 919 F.2d 140, 1990 WL 183907, at *1 (6th Cir. 1990) (TABLE, text in WESTLAW) (citing *Higgs v. Secretary, HHS*, 880 F.2d 860, 862-863 (6th Cir. 1988)); *Gist v. Secretary, HHS*, 736 F.2d 352, 357 (6th Cir. 1984)). As defined by Social Security regulations, a "severe" impairment is "any impairment or combination of impairments which significantly limits [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 416.920(c). Nevertheless, "[a]t step two 'significant' is liberally construed in favor of the claimant[, but] [t]he regulations provide that if the claimant's degree of limitation is none or mild, the Commissioner will generally conclude the impairment is not severe." *Griffeth v. Comm'r of Soc. Sec.*, 217 Fed. App'x 425, 428 (6th Cir. 2007); *see also* 20 C.F.R. § 416.920a(d)(1) ("If [the Commissioner] rate[s] the degree of limitation as 'none' or 'mild', [the Commissioner] will generally conclude that [the] impairment is not severe…") The Sixth Circuit Court of Appeals has construed Step Two's severity requirement as a "de minimus hurdle." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 243 n. 2 (6th Cir. 2007).

While the ALJ declined to designate Plaintiff's urinary issues as "severe" (Tr. 20-21), the alleged failure to do so does not necessarily signify error. Because an ALJ must move on to the subsequent steps in the sequential evaluation even if only one impairment is designated as "severe," an ALJ is not required to analyze the remainder of a claimant's impairments to determine whether they too are severe. *See, e.g., Anthony v. Astrue*, 266 Fed. App'x 451, 457 (6th Cir. 2008) ("The fact that some of [claimant's] impairments were not deemed to be severe at step two is … legally irrelevant") (*citing Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987) (same) holding that the failure to find that an impairment was severe was harmless error where other impairments were deemed severe); *Nejat v. Comm'r of Soc. Sec.*, 359 Fed. App'x. 574, 577 (6th Cir. 2009) (same); *McGlothin v. Comm'r of Soc. Sec.*, 299 Fed. App'x. 516, 522 (6th Cir. 2008)).

Once the ALJ makes a finding of severity as to even one impairment, the ALJ "must consider limitations and restrictions imposed by *all of an individual's impairments, even those that are not 'severe.'"* SSR 96-8p, 1996 WL 374184 at *5 (Jul. 2, 1996) (emphasis added). Thus, an ALJ's decision not to designate an impairment as "severe" at Step Two does "not constitute reversible error," so long as the ALJ considers all of a claimant's limitations caused by both severe and non-severe impairments at the remaining steps of the sequential evaluation. *Maziarz*, 837 F.2d at 244; *see also Nejat*, 359 Fed. App'x at 576-577. Here, the ALJ designated several of Plaintiff's impairments as severe, including pudendal neuralgia. (Tr. 20-21).

Although Plaintiff is correct that the ALJ did not designate any specific urinary issue as a "severe" impairment, the ALJ found multiple severe impairments at Step Two, continued with the sequential evaluation, and considered the impact of non-severe impairments when arriving at the RFC. Notably, the ALJ specifically stated she had "considered the claimant's statements at

14

the hearing regarding … urinary frequency." (Tr. 25). Thus, no Step Two error has been identified.

Plaintiff's sole assignment of effort admittedly appears more directed towards the ALJ's alleged failure to "provide a compelling basis for not including" Plaintiff's urinary and bladder-related limitations in the RFC. (R. 12, PageID# 1087-1088). At its core, Plaintiff's argument is a credibility argument, as the limitations Plaintiff believes were incorrectly omitted stem from her own self-reports. Plaintiff asserts that her hearing testimony establishes that her urinary issues would be "extremely limiting in the workplace." *Id*. She further maintains the medical record supports her testimony. *Id*.

An ALJ, however, is not required to accept a claimant's subjective complaints. *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 476 (6th Cir. 2003); *accord Sorrell v. Comm'r of Soc. Sec.*, 656 Fed. App'x 162, 173 (6th Cir. 2016). "[C]redibility determinations with respect to subjective complaints of pain rest with the ALJ." *Siterlet v. Sec'y of Health & Human Servs.*, 823 F.2d 918, 920 (6th Cir. 1987); *see also Villarreal v. Sec'y of Health & Human Servs.*, 818 F.2d 461, 463 (6th Cir. 1987) (An ALJ's credibility finding "should not lightly be discarded.") (citations omitted). Nevertheless, while an ALJ's credibility determinations concerning a claimant's subjective complaints are left to his or her sound discretion, those determinations must be reasonable and supported by evidence in the case record. *See, e.g., Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 249 (6th Cir. 2007).

"In evaluating an individual's symptoms, it is not sufficient for our adjudicators to make a single, conclusory statement that 'the individual's statements about his or her symptoms have been considered' or that 'the statements about the individual's symptoms are (or are not) supported or consistent.'" Social Security Ruling ("SSR") 16-3p, 2017 WL 5180304 at *10 (Oct.

25, 2017). Rather, an ALJ's "decision must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." *Id.* at *10. A reviewing court should not disturb an ALJ's credibility determination "absent [a] compelling reason," *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001), and "in practice ALJ credibility findings have become essentially 'unchallengeable.'" *Hernandez v. Comm'r of Soc. Sec.*, 644 Fed. App'x 468, 476 (6th Cir. 2016) (*citing Payne v. Comm'r of Soc. Sec.*, 402 Fed. App'x 109, 113 (6th Cir. 2010)).

According to SSR 16-3p (as well as SSR 96-7p which it superseded), evaluating an individual's alleged symptoms entails a two-step process that involves first deciding whether a claimant has an "underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms, such as pain."[2] 2017 WL 5180304 at *2-3. The ALJ's decision found the first step was satisfied with respect to some, but not all, of Plaintiff's reported symptoms, stating that Plaintiff's "medically determinable impairments could reasonably be expected to cause *some* of the alleged symptoms…." (Tr. 23) (emphasis added).

After step one is satisfied, an ALJ—when considering the intensity, persistence, and

_____

[2] "The Sixth Circuit characterized SSR 16-3p … as merely eliminating 'the use of the word credibility . . . to clarify that the subjective symptoms evaluation is not an examination of an individual's character.'" *Butler v. Comm'r of Soc. Sec.*, No. 5:16cv2998, 2018 WL 1377856, at *12 (N.D. Ohio, Mar. 19, 2018) (Knepp, M.J.) (*quoting Dooley v. Comm'r of Soc. Sec.*, 656 Fed. App'x 113, 119 n.1 (6th Cir. 2016)). Like several other courts, this court finds little substantive change between the two social security rulings, and the changes largely reflect a preference for a different terminology. *See, e.g., Howard v. Berryhill*, No. 3:16-CV-318-BN, 2017 WL 551666, at *7 (N.D. Tex. Feb. 10, 2017) ("having reviewed the old and new rulings, it is evident that the change brought about by SSR 16-3p was mostly semantic."). While the court applies the current SSR, it declines to engage in verbal gymnastics to avoid the term credibility where usage of that term is most logical.

limiting effects of an individual's symptoms—should consider the following seven factors: (1) daily activities; (2) the location, duration, frequency, and intensity of pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, an individual receives or has received for relief of pain or other symptoms; (6) any measures other than treatment an individual uses or has used to relieve pain or other symptoms; and, (7) any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms. SSR 16-3p at *4-8. The ALJ concluded that Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms were "not entirely consistent with the medical evidence of record for the reasons explained in this decision." (Tr. 23).

Plaintiff contends "[t]he medical record together with [her] hearing testimony establish that her bladder and urinary problems would be limiting in the workplace." (R. 11, PageID# 1088). However, the records cited by Plaintiff generally cite to the physician's review of systems, which do little more than document Plaintiff's subjective complaints. While some of the notes observe Plaintiff had bladder spasms, none objectively confirm the six to seven times daily urinary frequency or the amount of time spent in the restroom as related by Plaintiff during the hearing. (Tr. 476-478, 530, 571-577, 588, 741, 793, 813, 833, 844, 862). In other words, merely because Plaintiff reported unspecified urinary frequency to her physicians does not render her hearing testimony *per se* credible, especially as it relates to the duration and frequency of her restroom visits.

There is significant case law finding that a physician's act of recording a patient's subjective symptoms in a medical or treatment record does not convert such statements into

17

medical opinions. "Medical opinions are statements from acceptable medical sources *that reflect judgments about the nature and severity of your impairment(s)*, including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." 20 CFR § 404.1527(a)(1)(emphasis added). Thus, Plaintiff's statements, even if made to medical personnel, are not *per se* credible, nor are they transformed into "medical opinions" simply because a physician has recorded a patient's statements in treatment notes. *See, e.g., Francis v. Comm'r of Soc. Sec.*, 414 Fed. Appx. 802, 804 (6th Cir. 2011) (the physician's statement "is not a 'medical opinion' at all—it merely regurgitates [the patient's] self-described symptoms"); *accord Paddock v. Comm'r of Soc. Sec.*, No. 1:11-cv-7, 2012 WL 4356711 (W.D. Mich. Sept. 24, 2012); *see also Boughner v. Comm'r of Soc. Sec.*, No. 4:16-CV-1858, 2017 WL 2539839, at *8 (N.D. Ohio May 22, 2017), *report and recommendation adopted*, 2017 WL 2501073 (N.D. Ohio June 9, 2017) (finding that medical records containing observations recorded by a claimant's physician were likely statements made by plaintiff about his condition and not medical opinions as defined by the regulations); *Coleman v. Comm'r of Soc. Sec. Admin.*, No. 1:16-CV-0179, 2016 WL 8257677, at *14 (N.D. Ohio Nov. 29, 2016), *report and recommendation adopted*, 2017 WL 633423 (N.D. Ohio Feb. 15, 2017) (finding that "office notes reflect plaintiff's own subjective statements regarding her condition" and, therefore, do not constitute "objective medical evidence"); *Rogers v. Astrue*, No. 11-cv-82, 2012 WL 639473, at *4 (E.D. Ky. Feb. 27, 2012) ("Simply recording Plaintiff's subjective complaints is not objective medical data therefore Dr. Lyons' clinical findings were insufficient to support a deferential review by the ALJ.")

In addition, although Plaintiff's physicians may have diagnosed dysuria, frequent urination, and/or bladder spasms, a diagnosis alone is of little consequence, as it is well established that a

diagnosis alone does not indicate the functional limitations caused by an impairment. *See Young v. Sec'y of Health & Human Servs.*, 925 F.2d 146, 151 (6th Cir. 1990) (diagnosis of impairment does not indicate severity of impairment).

In the case at bar, the ALJ expressly found that neither Plaintiff's symptoms nor their intensity, persistence and/or limiting effects were "entirely consistent" with the medical and other evidence. (Tr. 23). While the record contains numerous instances where Plaintiff reported dysuria and urinary frequency, Plaintiff has not pointed to any "medical opinions" confirming the severity of her symptoms. Moreover, the ALJ did not ignore Plaintiff's hearing testimony concerning her genitourinary issues, but addressed them throughout the decision.

> She also reported bladder issues and stage II kidney disease for which she required injections and used the restroom six to seven times per day on a bad day for up to 15 minutes at time. Functionally, she testified that she could walk for three hours before needing to sit. She testified that she lived with her husband and two children, but that her husband worked a lot, so she received help in the home from others. She reported daily activities of cooking and cleaning, with which her mother helped her on her bad days, as well as going on social media and scrap booking.
>
> ***
>
> Nevertheless, the undersigned has considered all evidence in the record and notes that the residual functional capacity above accommodates all limitations supported by the medical record as a whole. Notably, these records reflect that the claimant received injections for pudendal neuralgia and chronic pelvic pain, and for which she was also prescribed diazepam. (Exhibit 2F). She continued these treatments during the relevant period as well. (Exhibits 4F, 7F, 13F-14F & 16F). A cystoscopy in April 2017 demonstrated no injury to the bladder, a normal bladder. (Exhibit 13F/75-76). In March 2018, the claimant was noted to be scheduled for Botox injections for her pudendal neuralgia. (Exhibit 13F/30).
>
> ***
>
> In sum, the residual functional capacity is supported by the totality of the evidence, including the claimant's treatment history, her medication use, the effectiveness of her treatment, and her activities of daily living. Although the evidence establishes underlying medical conditions capable of producing some

limitations, the substantial evidence of record does not confirm disabling limitations arising from these impairments, nor does it support a conclusion that the objectively determined medical conditions are of such severity that they could reasonably be expected to give rise to disabling limitations. In reaching this conclusion, the undersigned took into consideration the entirety of the medical record, the opinion evidence, and the statements of the claimant at hearing and found in disability and functions reports.

***

The undersigned has also considered the claimant's statements at the hearing regarding elevation of her legs and urinary frequency. However, these statements are unsupported by the record. Significantly, at no point does the record reflect a provider recommending elevation of the claimant's legs; however, they did recommend use of compression stockings daily, which she would not use until 2 p.m., and elevation of the head of her bed. Moreover, the record does not document the frequency and duration of urination as described by the claimant at hearing. This is not to say that the claimant was symptom free or did not experience difficulty performing some tasks. However, the objective evidence does not demonstrate the existence of limitations of such severity as to have precluded the claimant from performing all work on a regular and continuing basis at any time from the alleged onset date of disability.

(Tr. 23, 25-26).

Plaintiff points to no evidence beyond her subjective self reports—which the ALJ considered and did not credit—to support that she had symptoms as severe as she alleges for a continuous period of twelve months or more. Although Plaintiff's Brief on the Merits plainly takes issue with the ALJ's decision not to ascribe greater weight to her hearing testimony, she has not identified any substantive or procedural deficiency regarding the ALJ's above credibility analysis. The decision undeniably addressed Plaintiff's hearing testimony, accurately noting that the record does not document the frequency and duration of Plaintiff's restroom use. Therefore, the court finds no merit to Plaintiff's arguments revolving around dysuria or urinary frequency.

Finally, to the extent it is Plaintiff's position that the medical evidence could be construed as supporting Plaintiff's alleged limitations, such an argument is tantamount to an invitation for

this court to reweigh the medical evidence of record, and to specifically find Plaintiff's testimony credible and consistent with the evidence of record. This court's role in considering a social security appeal, however, does not include reviewing the evidence *de novo*, making credibility determinations, or reweighing the evidence. *Brainard*, 889 F.2d at 681; *see also Stief v. Comm'r of Soc. Sec.*, No. 16-11923, 2017 WL 4973225, at *11 (E.D. Mich. May 23, 2017) ("Arguments which in actuality require 're-weigh[ing] record evidence' beseech district courts to perform a forbidden ritual."), *report and recommendation adopted*, 2017 WL 3976617 (E.D. Mich. Sept. 11, 2017).

## VI. Conclusion

For the foregoing reasons, it is recommended that the Commissioner's final decision be AFFIRMED.

s/ *David A. Ruiz*

David A. Ruiz
United States Magistrate Judge

Date: January 6, 2021

## OBJECTIONS

**Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation. 28 U.S.C. § 636(b)(1). Failure to file objections within the specified time may waive the right to appeal the district court's order.  *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).**